Filed 11/14/13  P. v. Madden CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071435 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F06356) |
| v. | |
| DEMETRI MADDEN, | |
| Defendant and Appellant. | |

On June 3, 2010, an armed and masked man walked into the Arden branch of the Sacramento Credit Union and demanded money from three tellers, netting about $7,500 in cash before fleeing on foot.  A few minutes after the robber fled, police found the mask about 100 yards from the credit union.

Three months later, police took defendant Demetri Madden into custody. Defendant's DNA profile was the same as the profile of DNA taken from the mask.  On a cell phone found in defendant's car, police found pictures of numerous $100 bills, $20 bills, and $10 bills with a date stamp one day after the robbery.  There were no photographs showing defendant holding winning lottery tickets or being at a casino or

1

poker table. On the cell phone, police also found pictures of a Wells Fargo Bank, a 7-Eleven, a Radio Shack, a Circle K, and one picture of the security camera of an AM/PM convenience store. According to police, those establishments were common targets of robberies, and it was "very common for robbers to take photographs to case a place and have it on their phones prior to committing a robbery." There were no pictures of the Sacramento Credit Union.

A jury found defendant guilty of three counts of second degree robbery with personal use of a firearm for robbing the Sacramento Credit Union. The court (with defendant representing himself at the time) found defendant had one prior strike, had served two prior prison terms, and had one prior serious felony, and then sentenced him to 37 years eight months in prison.

Defendant appeals from the judgment, contending the trial court erred in (1) admitting evidence he had cased other businesses, (2) denying his motion to continue the bench trial on the priors, and (3) failing to arraign him for judgment and sentencing. Finding no prejudicial error, we affirm.

DISCUSSION

I

*The Court Erred In Admitting The Casing Evidence,*

*But The Error Was Harmless*

Defendant contends the court erred in violation of his federal rights to due process and a fair trial by admitting the photographs showing defendant had cased other businesses.

In the trial court, the People argued the casing evidence was admissible to show "planning of future crimes" and to put the pictures from defendant's cell phone "in context" because there were no pictures of him winning the lottery or winning at gambling in a venue like Las Vegas, but rather "what you have are photographs of places that are commonly robbed." Defense counsel objected based on "352" and "it is not

2

probative in any way" except possibly to say "he's a robber; look at these photographs." The trial court initially ruled that it was going to exclude the evidence because "it is really character evidence that is being used for propensity," and "it would be unduly prejudicial because it would speculate that [defendant] has robbed all sorts of other places, but there is no evidence that any of those places were robbed."

About halfway into trial, however, the court sua sponte reversed its ruling. It explained that it "was falsely thinking . . . that it was . . . bad act [evidence] . . . " but it was not and it "jumped the gun in thinking 1101(b) is even applicable." The People argued the pictures "show[ed] some degree of planning and preparation." Defendant argued there was no evidence defendant was even casing these businesses, there was no evidence they were robbed, and there was no "relevant connection between this crime and those photographs." The court concluded by saying, "I'm going to reverse my prior ruling, and I'm going to allow them in."

Defendant contends, as he did in the trial court, the photos were character evidence prohibited under Evidence Code section 1101, subdivision (a). He is correct. Evidence Code section 1101, subdivision (a) states the following: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." The casing evidence consisted of five specific instances of defendant's conduct in taking pictures of businesses that the police testified were common targets of robberies. The inference from this evidence, as the trial court initially and correctly recognized, was that defendant is a robber because he had cased other businesses and, therefore, he was the robber of the Arden branch of the Sacramento Credit Union as well.

The People's sole argument on appeal as to why this evidence was admissible is that it fell under the exception to Evidence Code section 1101, subdivision (b) of

" 'common design or plan.' "[1]  They argue, "the photographs indicated the existence of a plan (albeit not yet executed) to commit other robberies."  In the trial court, however, the People correctly recognized, "I don't think there is enough to make it an 1101(b) common plan [o]r scheme."  There was no evidence that in the current robbery defendant cased the Sacramento Credit Union.  Indeed, there were no photographs of the credit union on defendant's cell phone.  In short, there were no "common features" "indicat[ing] the existence of a plan."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)

We turn then to prejudice and explain why the error was harmless under either prejudice-based standard of review.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [before a state error can be held harmless, the court must be able to declare that it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)  Defendant's DNA exactly matched the DNA found on the mask that was used by the robber.  Moreover, defendant took pictures of what appeared to be the proceeds of the robbery within a day of its commission, and there was no other explanation of why defendant had that money or took those pictures.  The error was harmless.

---

[1]  Evidence Code section 1101, subdivision (b) states:  "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

## II

### *The Trial Court Did Not Err In Denying*
### *Defendant's Request For A Continuance*

Defendant contends the trial court violated his constitutional rights when it denied his motion to continue the bench trial on the prior convictions and the sentencing hearing after it had just granted defendant's motion to represent himself. As we explain, the trial court did not abuse its discretion in denying defendant a continuance.

" 'Continuances shall be granted only upon a showing of good cause.' [Citation.] 'The burden is on [the defendant] to establish an abuse of judicial discretion . . . .' [Citation.]" (*People v. Beeler* (1995) 9 Cal.4th 953, 1003.) "An important factor for a trial court to consider is whether a continuance would be useful." (*Ibid*.) "[T]o demonstrate the usefulness of a continuance a party must show both the materiality of the evidence necessitating the continuance and that such evidence could be obtained within a reasonable time." (*Ibid*.)

Here, the trial court was well within its discretion to deny defendant's request for a continuance for a simple reason -- the evidence defendant said he wanted to gather would have been irrelevant to the court's decision on the prior conviction findings. Defendant said he needed a "few weeks" to "get[] responses back from the letters and the information that [he] already sent out" "to the witnesses that [he] was going to be calling to speak on [his] behalf . . . ." The court asked, "[H]ow would their testimony be relevant in challenging the . . . priors [which included the strike, that was a gang prior]?" Defendant responded, "[T]hey would be able to provide testimony that would be able to prove that I am in no way, shape, or form, nor have I been in any way, shape or form, a gang member." As even defendant concedes on appeal, "such evidence would not have been admissible at the bench trial on the prior convictions as the issue would have been whether or not he suffered the conviction, not whether or not the conviction was just."

Defendant goes on to argue on appeal that the court's ruling nevertheless was wrong because he needed time to conduct legal research and suggests that if he had had enough time and had been permitted access to the jail's law library, he could have prepared a written request to strike the prior strike instead of making only a short oral request. This part of defendant's argument is conjecture and forfeited, as in the trial court the only argument defendant made for needing a continuance was to get statements from the witnesses about the gang prior. The trial court was well within its discretion to deny the continuance.

III

*The Court Erred In Not Arraigning Defendant For Judgment And Sentencing,*

*But The Error Was Harmless*

Defendant contends his case must be remanded for resentencing because the court erred in failing to comply with the requirements of Penal Code section 1200 before imposing judgment and sentence.

Penal Code section 1200 states: "When the defendant appears for judgment he must be . . . asked whether he has any legal cause to show why judgment should not be pronounced against him." Legal cause why judgment should not be pronounced consists of insanity or "good cause to offer, either in arrest of judgment or for a new trial." (Pen. Code, § 1201, subds. (a) & (b).)

Here, defendant is correct the trial court did not ask him if he had any legal cause to show why judgment should not be pronounced against him. He is incorrect, however, that his case must be remanded for sentencing. Nothing in the record suggests defendant had any legal cause, within the meaning of Penal Code section 1201, why judgment and sentence should not be pronounced. Where defendant " 'does not suggest any facts which would have in any way affected the disposition of the case had the trial judge made

6

[the Penal Code section 1200] inquiry,' [citation] it was not reversible error for the judge to omit arraignment for judgment [citation] or inquiry of the defendant as to whether there was any legal cause why judgment should not be pronounced." (*People v. Billetts* (1979) 89 Cal.App.3d 302, 311.)

DISPOSITION

The judgment is affirmed.


         ROBIE        , J.


We concur:


        BLEASE       , Acting P. J.


        MAURO       , J.